MOORE, Chief Justice
(dissenting).
I respectfully dissent. I would grant the writ of certiorari filed by M.R. (“the mother”) to challenge the termination of her parental rights to her child (“the child”). The mother presents several troubling facts in her petition that indicate the Mobile County Department of Human Resources (“DHR”) was careless with this case.
The mother alleges that the Mobile Juvenile Court (“the juvenile court”) acknowledged that DHR had not handled this case appropriately. Mia Smith, the DHR foster-care worker who was eventually assigned to the.case, testified that the previous DHR foster-care worker assigned to the case (who is no longer employed by DHR) had done nothing with the case but “could have” at least provided the mother with informational pamphlets. Smith testified that, at some point, the previous foster-care worker had spoken to -the mother about her history of drug use, but the worker then directed the mother to the wrong facility for a drug assessment. The mother made several telephone calls to the previous DHR foster-care worker about the erroneous instruction, but the worker insisted that the incorrect address she had provided to the mother was, in fact, correct. As a result, the mother was unable to undergo a drug assessment on that occasion.
The mother alleges in her petition that she provided Smith, with the names of several relatives with whom the child could be placed—including J.R., T.O., K.W., D.S.R., C.W., I.W., H.G., and M.G.—but that Smith contacted or attempted to locate only three of those relatives. The mother states that Natasha Dysart, another DHR worker, testified that, other than those three relatives, DHR made no effort to locate any relatives who could take custody of the child and that Dysart herself never asked the mother for any information on relatives with whom the child could be placed. The mother claims that it was undisputed that I.W. and H.G. were appropriate caregivers and that placement of the child with one of them was a viable alternative to terminating the mother’s parental rights.
The mother claims that Smith never considered D.S.R., the child’s maternal uncle, for potential placement of the child. She claims that, although Smith says she spoke to D.S.R. about the potential for placement, D.S.R. himself denies that such a conversation occurred. D.S.R. allegedly maintains that he believed DHR was going to place the child with J.R. but that, as *1124 soon as he found out that the child would not be placed with J.R., he petitioned for custody of the child. According to the mother, D.S.R. claims that DHR never asked him about filing for custody of the child, never included him in any individualized service plans, and never contacted him after he petitioned for custody of the child.
Only by granting the writ' may this Court review the full facts and procedural history of this case. When the State terminates a parent’s rights to his or her child based on evidence presented by the Department of Human Resources, the courts ought to ensure that the Department of Human Resources has complied fully and'competently with the law. Because DHR’s actions in this case appear questionable, I would grant the writ to review all the evidence in the record. Therefore, I respectfully dissent.